UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | Cr. No. 20-CR-290 (RBW) |
| ANGELITA AIPOALANI, | : | |
| Defendant. | : | |

**DEFENDANT ANGELITA AIPOALANI'S MEMORANDUM IN AID OF SENTENCING**

On April 1, 2021, Ms. Aipoalani pleaded guilty to a one count Information charging her with Conspiracy pursuant to 18 U.S.C. 371. She was released on her own recognizance and has been in full compliance with her release conditions. The criminal conduct charged in the Information occurred from November 2015 through June 2019. In light of all of the circumstance of this case, Ms. Aipoalani, through counsel, respectfully requests that the Court sentence her to probation with community service.

**SENTENCING FACTORS**

When imposing a sentence, the Court must consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3) The kinds of sentences available;

  (4) The kinds of sentence and the sentencing range established for [the applicable offense and the applicable category of defendant as set forth in the Sentencing Guidelines];

  (5) Any pertinent policy statement [issued by the Sentencing Commission];

  (6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) The need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a); *United States v. Booker*, 543 U.S. 220, 259 (2005).

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

  *See* 18 U.S.C. § 3582 (emphasis added). With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a) (emphasis added). Several years after *Booker*, the Supreme Court made clear that the "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2). In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth. 18 U.S.C. § 3661.

  Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*.

18 U.S.C. § 3582(a) (emphasis added).

Since *Booker*, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one factor to be considered by district courts when fashioning a reasonable sentence and that the Sentencing Guidelines are not to be weighed more heavily than other sentencing factors. *See Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007). A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range. *Rita*, 551 U.S. at 338; *Gall*, 552 U.S. at 46. The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable. *Id.* By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." *Rita*, 551 U.S. at 351.

It is critical for sentencing courts to consider all sentencing factors and to not give undue weight to the Sentencing Guidelines because, as the Supreme Court has long emphasized that "'[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)); s*ee also United States v. Faison*, No. GJH-19-27, 2020 U.S. Dist. LEXIS 27643, at *4-5 (D. Md. Feb. 18, 2020)("But if judges are not careful, a rote application of the Guidelines can turn what is often a life-defining

moment for the defendant into a check-the-box, formulaic calculation devoid of the individualized sentencing we strive for.").

Overall, judges are encouraged to resist "anchoring" the sentence on the guideline numbers. "Anchoring is a cognitive bias that describes the human tendency to adjust judgments or assessments higher or lower based on previously disclosed external information - the 'anchor.' Studies demonstrate 'that decisionmakers tend to focus their attention on the anchor value and to adjust insufficiently to account for new information.'" Mark W. Bennett, *Confronting Cognitive "Anchoring Effect" and "Blind Sot" Biases in Federal Sentencing: A Modest Solution for Reforming a Fundamental Flaw*, 104 J. Crim. L. & Criminology 489, 495 (2014) (citations omitted).

> It is important to distinguish the guidelines' intended, salutary effect - promoting consistency and proportionality in sentencing - from the unintended anchoring effect that the guidelines can exert. … Anchoring leads to cognitive error not insofar as judges intentionally use the guidelines in an advisory fashion, but instead when judges irrationally assign too much weight to the guidelines range, just because it offers some initial numbers.

*Id.* at 524 (inner quotation marks and citation omitted); *see also United States v. Docampo*, 573 F.3d 1091, 1105 n.5 (11th Cir. 2009) (Barkett, J., concurring and dissenting) ("Not only have district courts now become used to relying on [the Guidelines], but the Guidelines inevitably have a considerable anchoring effect on a district court's analysis"). However, the sentencing guidelines remain one of the factors that the Court must consider.

**(1)     The United States Sentencing Guidelines.**

Ms. Aipoalani, the government and the Probation Office are in agreement as to the guideline calculation. At an offense level of 10 and criminal history category I, the guideline range is 6 to 12 months and Ms. Aipoalani is eligible for a period of probation. We ask that the Court impose a sentence of probation.

**(2)	The Nature and Circumstances of the Offense.**

Ms. Aipoalani does not dispute the seriousness of the offense and she makes no excuses for her criminal actions.  The nature and circumstances of the offense have been accurately portrayed both in the statement of offense she agreed to and in the PSR.  She deeply regrets having engaged in this fraudulent behavior.  To her credit, she immediately accepted responsibility for her behavior and agreed to plead guilty. She acknowledged her wrongdoing without any hesitation and ultimately pleaded guilty.

**(3)	The History and Characteristics of the Defendant.**

Ms. Aipoalani has no prior criminal conduct whatsoever.  She was born in the Philippines but raised in Hawaii where she lives now with her husband and children as well as extended family members. Ms. Aipoalani's mother died when she was just 10 years old, but she had the good fortune to be raised with many siblings and a supportive family.

Ms. Aipoalani and her husband have been together for 24 years – more than half her life. They have three children, ages 12 and 16, all of whom are in school in Hawaii.  With Mr. Aipoalani facing a longer term of incarceration, Ms. Aipoalani will have sole responsibility for the children.  As Mr. Aipoalani has opined, she trusted him and relied upon him, and is now prepared to question what is occurring much more carefully.  Her employment was terminated upon learning of her and her husband's crimes.  However, she does have a history of employment and is hopeful that she will be able to obtain employment that will allow her to earn enough to support her family especially while her husband is in custody.

As the Court can see from the letters attached to this sentencing memorandum, Ms. Aipoalani has the support of her family and community despite these charges. She was a valuable member of her community prior to this conviction and will continue to be after this sentencing. She wants to make amends by giving back to her community in whatever way she can while continuing to care for her children.

**(4)    The Purposes of Sentencing.**

The Sentencing Reform Act requires the Court to impose a sentence that not only will reflect the seriousness of the offense and promote respect for the law, but also will provide just punishment, afford deterrence to criminal conduct, and protect the public from further crimes of the defendant. Here, the Court can fully achieve these sentencing goals by imposing a non-custodial sentence that couples probation with community service rather than imposing a term of incarceration.

Ms. Aipoalani is unlikely to recidivate given her age and her lack of any prior criminal history as well as her role in this offense. The United States Sentencing Commission has identified increased age as a powerful predictor of reduced recidivism. U.S.S.C., *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score* (Jan. 4, 2005), at 13-15, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2005/20050104_Recidivism_Salient_Factor_Computation.pdf. The Sentencing Commission has reported that "[r]ecidivism rates decline relatively consistently as age increase." U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004), at 12 & Ex. 9, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-

publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf.

The same study, and others, find employment, strong family ties, no criminal history, and a lack of substance abuse problems all lead to a much lower risk of recidivism. All of these factors weigh in Ms. Aipoalani's favor.

**(5)     The Kinds of Sentences Available.**

Here, rather than imposing any period of incarceration, the Court could sentence Ms. Aipoalani to a period of probation with home confinement and/or community service.   There is no mandatory period of incarceration for this charge.

**(6)     The Need to Avoid Unwarranted Disparities.**

The sentence requested by the defense would not result in *unwarranted* disparities.  *See* 18 U.S.C. § 3553(a)(6).

**(7)     Restitution.**

Ms. Aipolani intends to fully cooperate to make payments toward restitution to the best of her abilities.

For all of the foregoing reasons, and for reasons to be presented at the sentencing hearing, Ms. Aipoalani respectfully requests that the Court sentence her to a term of probation with community service.

        Respectfully submitted,

        A.J. KRAMER
        FEDERAL PUBLIC DEFENDER

       _____/s/_____
Michelle Peterson
Chief Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500